CHARLES E. FRAHM, APPELLEE, V. DAVID E. CARLSON, APPELLANT.

334 N.W.2d 795

Filed June 3, 1983. No. 82-256.

Ray C. Simmons of Ray C. Simmons, P.C., for appellant.

Clarence E. Mock of Johnson & Mock, for appellee.

McCOWN, HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Defendant, David E. Carlson, appeals a $35,000 personal injury jury verdict awarded to plaintiff, Charles E. Frahm, a 43-year-old farmer. The main issue concerns a written release executed by plaintiff containing an "injuries, known and unknown," clause, which plaintiff claimed was void because of mutual mistake. We affirm.

Briefly, the accident occurred on June 22, 1978, in Oakland, Nebraska, when Carlson backed out of a driveway into Frahm's car occupied by his wife, Clara, daughter Debbie, two sons, and Charles. Charles, Clara, and Debbie were examined by Dr. Gayle Petersen, M.D. Frahm struck his forehead on a car doorpost; he complained of a headache, dizziness, and being sick at his stomach. Aspirin was prescribed, and the doctor said his reported symptoms would go away. Frahm's car was totaled; he claimed it was worth $3,500. On July 5, 1978, Frahm executed a release that recited in part, "For The Sole Consideration of Three-thousand-five-hundred-fifty-and-no 100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges David E. Carlson . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of *all injuries, known and unknown*, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 22nd day of June, 1978 . . . ." (Emphasis supplied.) Frahm's headaches persisted; in September 1978 he began to have pains in his neck and arms, which continued to worsen; December 19, 1978, he again consulted Dr. Petersen, who referred him to Dr. John L. Greene, M.D., a neurological surgeon in Omaha, Nebraska. Dr. Greene diagnosed Frahm's condition as a herniated disc between the 5th and 6th cervical vertebrae. Fusion surgery followed. The neck pain continued, and Frahm received further medical treatment from Dr. Lonnie Mercier, M.D., orthopedic surgeon, and Dr. J. Whitney Kelley, M.D. At the time of trial Frahm continued to have headaches and pain in his neck and arms.

Assigned errors 1 and 2 concern the denial of defendant's motion for directed verdict made at the close of the evidence.

"In every case, before the evidence is submitted to the jury there is a preliminary question for the court to decide when properly raised, not whether there is literally no evidence but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it upon whom the burden of proof is imposed." *Edward Peterson Co. v. Ulysses S. Schlueter Constr. Co.*, 179 Neb. 883, 888-89, 140 N.W.2d 830, 833 (1966).

"A motion for directed verdict must be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." *Hansen v. Hasenkamp*, 192 Neb. 530, 534, 223 N.W.2d 44, 47 (1974).

First, defendant claims that the release was binding on plaintiff and that he failed to meet his burden to prove that mutual mistake invalidated the release.

It is the majority rule that a release of personal injury claims may be avoided on grounds of mutual mistake as to the nature and extent of the injury sustained. See, Annot., 13 A.L.R.4th 686, 694 (1982); Annot., 71 A.L.R.2d 82 (1960); 66 Am. Jur. 2d *Release* §§ 30, 32 (1973). Nebraska has long followed that rule, as discussed in *Simpson v. Omaha & C. B. Street R. Co.*, 107 Neb. 779, 782-83, 186 N.W. 1001, 1003 (1922): "What we believe to be the true rule is that the mistake must relate to either a present or past fact or facts that are material to the contract of settlement, and not to an opinion as to future conditions as the result of present known facts. . . . [W]here the mistake is as to the extent of the injury due to unknown conditions or relates to injuries that were wholly unknown, then the release may be avoided, unless it further appears that the parties were contracting with respect to possible unknown injuries,

*and the releasor intended to relinquish all claims, whether known or unknown.* In the latter case there would be no mutual mistake. Where one who has sustained personal injuries, and with his attention directed to the known injuries, which are trivial in their nature, contracts for the settlement of his damages with reference thereto, in ignorance of other and more serious injuries, both parties at the time believing that the known injuries are all the injuries sustained, then there is a mutual mistake, and the release, although couched in general terms, should be held not to be a bar to an action for the more serious and unknown injuries." (Emphasis supplied.)

In *Simpson* claimant fell while boarding a streetcar. The only known personal injuries were skin scratches. The $50 release was for torn clothing. After a few months serious physical and emotional resulting injuries developed. The release recited that the defendant was released " 'from any and all cause or causes of action, costs, charges, claim or demand, of whatever name or nature, in any manner arising or to grow out of an accident occurring . . . .' " *Id.* at 780, 186 N.W. at 1002. The *Simpson* rule was followed in *Collins v. Hughes & Riddle*, 134 Neb. 380, 384, 278 N.W. 888, 891 (1938), where the release contained the term, " 'injuries, known & unknown.' " See, also, *McCamley v. Shockey*, 636 F.2d 256 (8th Cir. 1981).

On this issue, this additional evidence is favorable to plaintiff: Six days after the accident, Ed Hanna, the local agent for State Farm Insurance, Carlson's insurer, sent claim forms to Frahm and asked him to meet at his office on July 5. Frahm obtained two estimates of car repair ($3,200 and $3,700) and met with Hanna and Harold McClellan, a claims adjuster for State Farm Insurance. They discussed settlement of the car claim. Frahm wanted $3,500, and $75 for his out-of-pocket medical expense. McClellan said the highest company book value for the car

was $3,200. A settlement was agreed upon for $3,550, which McClellan coded for company records as $3,200 for the car and $350 for medical expenses. Plaintiff says he only intended to settle for the car loss and the $75 medical expenses then incurred. McClellan prepared a release on a company form and Frahm signed his name and his wife's name after he glanced at it. At the time, Frahm advised McClellan that he had had a stiff neck, that he still had headaches, and that he had received a bruise on the forehead. Frahm said he felt all right, and McClellan testified that Frahm looked all right. There was no other discussion of pain and suffering, loss of work, or of any other injuries. From this record there was a jury question of the intention of the parties and of mutual mistake.

Second, defendant argues that plaintiff's evidence was insufficient to go to the jury on the question of the proximate cause of the neck injuries. His argument is that plaintiff made no complaint of neck pain until several months after the accident and that proof of causation is entirely subjective without supporting medical testimony, citing *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). The record shows otherwise. At the time that the release was signed, Frahm complained of headaches and that he had a stiff neck. Following the accident, Frahm had a red bruise mark on his forehead, caused by striking the doorpost. In *Eiting* we held that this would justify an inference of causation. See, also, *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967). Further, there was expert medical testimony by Dr. Greene, Dr. Kelley, and Dr. Mercier, if believed, that establishes proximate cause for the neck injuries.

Defendant's motion for a directed verdict was properly denied.

Next, defendant claims prejudicial error in the giving of jury instruction Nos. 9, 14, 15, and 16, and also the court's refusal to give two offered instructions.

*Instruction No. 9*: "A release is binding on the one who signed it, where he was of mature age, able to read and write, somewhat experienced in business transactions, and had an opportunity to read the release, unless the Plaintiff proves by a preponderance of the evidence: 1. That the injury for which he seeks damages is not the result of the development of an injury known at the execution of the release, but is an injury that was wholly unknown at the release's signing. 2. That the language of the release which purports to be a release of all known and unknown injuries does not reflect the actual agreement of the parties, but was a result of a mutual mistake of the parties."

This was followed by instruction Nos. 10 and 11 that defined and described mutual mistake. *Instruction No. 15* explained the effect of the jury's findings under instruction No. 9. From a reading of these instructions, along with all the other instructions, there was no prejudice or error. See *Buhrman v. Smollen*, 164 Neb. 655, 83 N.W.2d 386 (1957).

*Instruction No. 14*: "Language in an insurer-prepared release, such as the one in this case, which indicates that the settlement covers all injuries, 'known and unknown', does not in and of itself conclusively demonstrate the parties' intent to settle claims for unknown injuries."

Defendant objects to the use of the phrase "insurer-prepared release." While generally the use of such a description in a like instruction should be avoided, there is neither error nor prejudice here. In defendant's opening statement counsel said, "This is, of course, given on behalf of Rev. Carlson, or really on behalf of State Farm, which for all practical purposes, is the defendant here. We've indicated that we admit liability. It's just a question of whether the release is good . . . ." The whole record has many references by both parties to State Farm Insurance and its agents; defendant's closing argu-

ment has numerous references to "State Farm" and "bad State Farm."

*Instruction No. 16* (NJI 4.01, 4.04, 4.05, and 4.07): Defendant complains that there was no evidence for the jury to consider future pain and suffering, future medical expenses, and loss of future earning capacity. There was expert medical testimony that Frahm had a 15-percent disability and that he would have pain in the future and future medical expenses. Past medical expenses in the record were competent proof on the issue of future medical expense. *Yount v. Seager, supra.* Loss of future earning capacity is an item of general damage shown here by evidence of plaintiff's skills, experience, training, age, and health. See *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964).

Lastly, defendant complains that the court refused to give two offered instructions, taken from *Swartz v. Topping*, 191 Neb. 41, 213 N.W.2d 718 (1974), in substance, that a party who fails to read a release is barred from claiming the release is not binding, and all persons are presumed to read and understand the terms of their contract. The court correctly refused these two instructions.

There being no error in this record, the judgment is affirmed.

AFFIRMED.