BRENDA K. MORTON, APPELLANT, V. FARMERS COOPERATIVE
BUSINESS ASSOCIATION OF SHELBY, NEBRASKA, ET AL., APPELLEES.
510 N.W.2d 326

Filed March 16, 1993.   No. A-90-1149.

Bernard J. Monbouquette, of Gallup & Schaefer, and Stephen L. Gerdes for appellant.

Gail S. Perry and Donald R. Witt, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

SIEVERS, Chief Judge, and CONNOLLY and WRIGHT, Judges.

WRIGHT, Judge.

Brenda K. Morton appeals the summary judgment in favor of the defendants in this action arising from an automobile accident. She claims that there remains a material issue of fact as to whether the release she signed was based on a mutual mistake of the parties concerning the nature and extent of her injury.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom

the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992).

After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

## FACTS

Brenda Morton's automobile collided with a truck driven by an employee of Farmers Cooperative Business Association of Shelby, Nebraska, and she sued Farmers Cooperative. The amended answer filed by Farmers Cooperative admitted that the accident had occurred and that Brenda had sustained injuries, but asserted that there was a full accord and satisfaction because Brenda had signed a release of any claim for personal injury.

After the accident, Brenda was taken to an emergency room in Council Bluffs, Iowa, where x rays showed no abnormalities and she was diagnosed as having a minor head injury and neck strain. Brenda was pregnant, and she refused to execute any releases until after the birth of her child. It was undisputed that the insurance carrier for Farmers Cooperative, Farmland Insurance, assumed that Brenda's injuries were minor. The adjuster offered Brenda's husband, Calvin Morton, $500 in compensation for Brenda's injuries.

Brenda's affidavit, received at the hearing on the motion for summary judgment, stated in part:

On December 6, 1985, I was driving my car on South

42nd Street in Omaha. A pickup truck came from the right side and hit my car, causing it to be hit by several other vehicles. I hit my head on the inside of my car several times. I believe my head hit the side window two or three times at least. X-rays taken afterwards at Mercy Hospital in Council Bluffs, Iowa did not show any problems.

I began having headaches, trouble with my vision, and ringing in my ears right after the day of the accident. These problems have continued to this day. I saw an eye doctor about the vision problems. I also saw Dr. John McCarthy who was my family doctor and who took care of me during my pregnancy. (I was pregnant at the time of the accident. My baby was born April 8, 1986.) Neither of these doctors gave me any reason to believe that I had suffered a traumatic brain injury in the accident.

Brenda stated that she remembered signing the release, but did not remember reading it. She said that if she had believed the $500 check was payment for all of her injuries, she would not have accepted it. Her affidavit recited that since the accident she has had problems with her balance, often falling to the right while walking. She was not told that she had a head injury until several years after the accident.

Dr. Jan Golnick's affidavit recited that Brenda had provided him with a medical history in which she described an automobile accident. She said she had been hit by several cars from different directions and, as a result, had developed a severe headache. Two days after the accident, she developed blurred vision, ringing in her ears, and pounding headaches lasting 2 to 3 hours. All of these symptoms became more intense and frequent. Three to six months after the accident, Brenda noticed a problem with her distance vision. Golnick believed that Brenda had sustained a significant closed head trauma followed by posttraumatic headaches. Golnick said Brenda had no appreciation that she had a severe head injury.

The evidence received at the hearing on the motion for summary judgment showed that Cherie Burcham, a claims representative for Farmland Insurance, sent a check for $500 payable to Calvin and Brenda to compensate Brenda for her injuries. Burcham understood that the offer was based on the

assumption that Brenda had sustained only minor soft-tissue injuries.

Farmland Insurance processed the claims and issued a draft to Brenda for $180.85 for medical expenses. In January 1986, Brenda told the company that she wanted $5,000 but would settle for $2,500 and that she would not sign a release on her unborn child.

After the child was born, Farmland Insurance's adjuster was contacted by Calvin about the vehicle damage and Brenda's physical condition. The adjuster was not advised that Brenda was continuing to have symptoms as a result of the accident. The $500 offer of settlement for personal injury was renewed. Calvin did not refuse the offer, but stated he was not ready to settle his property-damage claim. On May 1, 1986, the adjuster noted in the file that there was no problem with the Mortons' baby and that "soft tissue injury ok." Calvin called the company and gave his permission to send the $500.

On May 6, 1986, Calvin and Brenda executed a release and settlement for the sum of $500. The release recited that it was in full settlement of a disputed claim growing out of bodily injury sustained by Brenda as a result of an accident which occurred at or near Omaha, Nebraska, on or about December 6, 1985, and it discharged Farmers Cooperative from any and all claims, known and unknown, which may have been sustained by Brenda as a result of the accident and injury. The $500 draft was paid on May 9, 1986.

## REPLY BRIEF

Brenda's reply brief adds an assignment of error not asserted in her original brief. She now argues that the district court erred in failing to rule on the admissibility of medical evidence submitted by affidavit at the hearing on the motion for summary judgment. However, because errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief, we will not consider this assignment of error and will not consider the contents of the affidavit in determining the issue of the case. *Keithley v. Black*, 239 Neb. 685, 477 N.W.2d 806 (1991).

## ANALYSIS

At the hearing on the motion for summary judgment, exhibits 1 through 25 were received without objection. Exhibit 24 is the release and settlement which discharged the defendants for all injuries known or unknown. The issue is whether the release was the result of mutual mistake. The release entitles Farmers Cooperative to a judgment as a matter of law. The burden is upon Brenda to present evidence showing a mutual mistake of fact which would prevent the judgment as a matter of law in favor of Farmers Cooperative. See *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992).

Nebraska has followed the majority rule that a release of personal injury claims may be avoided on the grounds of mutual mistake as to the nature and extent of the injury sustained. *Frahm v. Carlson*, 214 Neb. 532, 334 N.W.2d 795 (1983). In *Frahm*, the defendant appealed a $35,000 personal-injury verdict. Frahm had previously executed a release which provided that in consideration of $3,550, Carlson was released and forever discharged from any and all claims on account of all injuries known or unknown which could in the future develop from the accident in question. At the time of the release, Frahm complained of headaches, dizziness, and nausea. The doctor prescribed aspirin and said the symptoms would subside.

Six days after the accident, Frahm told the insurance company that he had a stiff neck and headaches and had received a bruise on his forehead, but he said he felt all right. There was no other discussion concerning pain, suffering, loss of work, or other injuries. Frahm asked for $3,500 for the car and $75 for his out-of-pocket expenses. The settlement for $3,550 was shown in the company records as $3,200 for the car and $350 for medical expenses. Frahm's headaches persisted, and he began to have increasing pain in his neck and arms. A subsequent diagnosis found that he had a herniated disk between the fifth and sixth cervical vertebrae. Frahm claimed he intended to settle for the property damage and $75 in medical expenses only. The court held that, based on the record, questions of the intent of the parties and of mutual mistake

were for the jury.

The two Nebraska cases which refused to invalidate a release, *La Rosa v. Union P. R. Co.*, 142 Neb. 290, 5 N.W.2d 891 (1942), and *Swartz v. Topping*, 191 Neb. 41, 213 N.W.2d 718 (1974), are based upon the fact that the injuries were serious and so obvious that the plaintiff was not permitted to avoid the release on the grounds of mutual mistake.

In an attempt to determine the intent of the parties in executing a release, courts have considered the conduct and circumstances surrounding the execution of the release. In *Williams v. Glash*, 789 S.W.2d 261 (Tex. 1990), a motorist received $889.46 for property damage and signed a release for all personal injuries known and unknown. Later, the motorist was diagnosed with temporomandibular joint syndrome (TMJ). The court stated: "[W]hether the parties to a release intended to cover an unknown injury cannot always be determined exclusively by reference to the language of the release itself. It may require consideration of the conduct of the parties and the information available to them at the time of signing." 789 S.W.2d at 264.

In *Williams*, the motorist had no knowledge of the TMJ injury and neither discussed nor bargained for settlement of a personal injury claim. The amount received was exactly the sum of the property-damage claim for her car. The court held that this was sufficient to establish a genuine issue of fact as to intent and reversed the summary judgment in favor of the defendant.

> Thus, where a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or unknown at the time.

13 Samuel Williston, A Treatise on the Law of Contracts, § 1551 at 191-92 (Walter H.E. Jaeger 3d ed. 1970).

We review the evidence construing all reasonable inferences in a light most favorable to Brenda. This evidence shows that Brenda's condition did not change from the time of the accident

to the date of the release and has not changed since the date of the release. She had headaches and dizziness, ringing in her ears, and double vision. Since the accident, she has had a problem with her balance, often falling to the right while walking. These symptoms have persisted and continue to this day. The only difference prerelease and postrelease is that in 1989, Brenda found a doctor who diagnosed her symptoms.

Because a mutual mistake of fact is necessary to avoid the release, Brenda must show that more serious injuries developed than were believed to exist at the time of settlement in order to present a question of fact. The evidence does not establish that her injuries were any different when she filed this action than they were at the time of the release.

We find there was no mutual mistake of fact which would void the release. Having considered Brenda's other assignments of error, we find them to have no merit.

The summary judgment is affirmed.

. AFFIRMED.