HOLT COUNTY SCHOOL DISTRICT NO. 0025, COMMONLY KNOWN AS WEST HOLT RURAL HIGH SCHOOL, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT, V. RICHARD L. DIXON, AN INDIVIDUAL, DOING BUSINESS AS TRACK RENOVATIONS & ASPHALT COATING, APPELLEE.

594 N.W.2d 659

Filed May 18, 1999.    No. A-97-1296.

Steve Williams, of Recknor & Associates, for appellant.

Melissa A. Schrant, of Freese & Einspahr, P.C., for appellee.

Mues, Inbody, and Carlson, Judges.

Carlson, Judge.
Holt County School District No. 0025, commonly known as West Holt Rural High School (West Holt), appeals from an order of the district court for Holt County, dated December 1, 1997, granting a motion for summary judgment filed by Richard L. Dixon, an individual, doing business as Track Renovations & Asphalt Coating. For the reasons set forth below, we affirm.

## BACKGROUND

In a petition filed April 11, 1997, West Holt alleged that on April 27, 1995, Dixon entered into a contract with West Holt to undertake certain repairs on the athletic running track at the West Holt high school. West Holt alleged that Dixon performed the contract but did so in a nonworkmanlike and negligent manner and that as a result, the track had experienced numerous cracks and deteriorated into an unusable and dangerous condition. West Holt alleged that there were numerous separations between the running surface and the base materials and that the filler material Dixon applied to the cracks on the track had separated from the cracks and failed to bond.

In its first cause of action, West Holt alleged that as a proximate result of Dixon's breach of the contract, it was required to make temporary repairs to the track in an effort to comply with its interscholastic contracts. West Holt alleged that these temporary repairs cost $2,800. In its second cause of action, West Holt alleged that as a proximate result of Dixon's breach, it would be required to remove the improperly placed surface on the track and redo the work previously done on the track by Dixon. West Holt alleged that the fair and reasonable cost of these repairs is $28,300. In total, West Holt requested $31,300 in damages, costs of the action, and other just and equitable relief.

In an answer filed May 15, 1997, Dixon admitted that he undertook to perform the contract but denied every other allegation in West Holt's petition, except those constituting admissions against West Holt's interest. Dixon requested that West Holt's petition be dismissed with prejudice at West Holt's costs and that he be awarded his costs and expenses.

On October 24, 1997, Dixon filed a motion for summary judgment and requested that the trial court dismiss West Holt's petition because there was no genuine issue as to any material fact. Dixon stated that he was entitled to judgment as a matter of law.

A hearing on Dixon's motion for summary judgment was held on November 12, 1997. At the hearing, Dixon offered into evidence his deposition and affidavit; the affidavit of George Shinker, the former superintendent of West Holt; and the contract at issue in the instant case.

In Dixon's affidavit, he stated that in the summer and fall of 1994, he negotiated with the West Holt school board (Board) with respect to doing some work on the track at the school. Dixon stated that he spoke with Shinker, the superintendent of West Holt at that time. Dixon stated that early in the negotiation process, he viewed the track and noticed that the track had a problem with cracking. Dixon stated that after speaking with Shinker, he made his first proposal, suggesting that he completely tear out the track and redo it. Dixon testified that he told both the Board and Shinker that cracking would always be a problem unless he fixed the base, where the problem originated, and that this was the only way to eliminate any problems with cracking. Dixon stated that he told the Board that anything else would be nothing more than a temporary fix, that the cracking would continue and very likely worsen, and that the track itself would continue to deteriorate. Dixon stated that it would cost $140,000 to tear up the track and redo it and that because of the cost, the Board rejected his first proposal.

Dixon stated that the Board chose another alternative, signing two contracts on May 1, 1995. Pursuant to the first contract, Dixon was required to repair any cracks and place a new rubber surface on the high jump area and two runway areas at the West Holt high school. In the second contract, Dixon agreed to repair the cracks and apply a new surface to the school's running track. Only the second contract is at issue in this appeal, and therefore, we will not discuss the first contract further. In the contract at issue, Dixon included a 3-year guarantee on the materials he used as well as his workmanship, "except that as applied to cracks."

Dixon stated that he told Shinker and the Board that the longevity of his work would depend on maintenance of the track. Dixon stated that he suggested that West Holt maintain the track on at least an annual basis. Dixon stated that without such maintenance, the track would start deteriorating, even deteriorate rapidly, and that the cracks would reopen, depending on the water cycle. Dixon stated that the Board rejected the maintenance agreement he proposed with the contract, the Board concluding that it would deal with the issue when and if problems occurred. Dixon stated that he also suggested to the

Board that curbs be installed around the track, preventing the track from expanding and contracting, which causes cracks. Dixon stated that he advised Shinker and the Board that this would prevent new cracks from developing, but that it would not do much to fix the existing cracks unless the base was stabilized. Dixon stated that the Board rejected this proposal, claiming that the cost of $20,000 was beyond its means.

Similarly, in Dixon's deposition, he testified that he is self-employed and that he has been repairing and installing running tracks since 1983. Dixon testified that since 1983, he has installed 75 to 80 tracks. Dixon testified that he was a sole proprietor while working on the West Holt track and that he incorporated his business, effective April 1, 1997. Dixon outlined the work he had done on the West Holt track in October 1995, stating that he filled in the existing cracks on the track's surface, cleaned the track surface, and applied a new rubber surface to the track in multiple layers. Dixon stated that he also applied a topcoat to the track and restriped the track. Dixon stated that the work on the track took approximately 2 weeks and that a freeze of unknown duration slowed the project's completion. Dixon specified the materials and the tools used to complete his work on the track and stated that he used the materials and tools he normally uses. Dixon stated that none of the equipment had broken down during the job and that he had had no problems with his workers. Dixon stated that a minor act of vandalism occurred during the project, but did not affect or hinder his work.

Dixon testified that West Holt contacted him sometime after October 1995 to inspect the track, stating that several of the cracks on the track had reopened. Dixon testified that he did not inspect the West Holt track at that time.

Dixon testified that on June 27, 1996, West Holt changed its mind about entering into an annual maintenance contract with Dixon and contacted Dixon in writing requesting that Dixon perform maintenance work on the track in July 1996. Dixon testified that he was unable to accept the offer because of its late notice. Dixon testified that sometime in June, July, or August 1997, he inspected the West Holt track and that whatever cracks had reopened had been filled in. Dixon testified that after West

Holt filed its lawsuit, but before he filed his answer, he took his video camera to West Holt to record the conditions of the track.

Dixon testified concerning the guarantee included in the contract regarding the track and testified that West Holt's allegations concerning the separation of the rubberized surface from the filler material as well as the underlying base were possibly excluded from the guarantee in the contract because of the contract's exclusion relating to "cracks." Dixon testified that because of the track's poor foundation, the cracks he filled in reopened, causing the surface of the track to crack and separate from the track's base. Dixon testified that he made it very clear to the Board that unless the track's foundation problems were corrected, the track would continue to crack.

In Shinker's affidavit, he stated that he was the superintendent of West Holt until May 31, 1995, and that before he left, he negotiated with Dixon directly concerning the track, relaying information from Dixon to the Board, and from the Board to Dixon. Shinker stated that he was present at all conferences between Dixon and the Board.

Shinker stated that he began negotiating with Dixon in the summer of 1994. Shinker stated that during the summer, he visited at least three schools at which Dixon had previously done some work on their tracks. Shinker stated that he visited with school personnel at the three schools and that after observing the tracks, his impression was that Dixon was competent and that he stood behind his work. Shinker stated that the school personnel with whom he talked spoke very highly of Dixon.

Shinker stated that at one point, Dixon did some temporary work at West Holt and that when Dixon completed this work, both Shinker and the Board were happy with the results. Shinker stated that based on this, the Board later approved the contract with Dixon.

Shinker stated that during negotiations regarding the track, Dixon first advised him and the Board that in order to correctly fix and eliminate the cracks in the existing track, the track would have to be redone, including the base. Shinker stated that ever since the track was built, West Holt had had problems with the track cracking and that these cracks had existed during his 17 years at West Holt. However, Shinker testified that accord-

ing to the Board, Dixon's first suggestion was cost prohibitive, and that the Board rejected this suggestion in its entirety.

Shinker stated that the Board then went ahead and signed the contract regarding the track as detailed above. Shinker stated that during the course of negotiations, Dixon told the Board that if West Holt wanted the work on the running track to be done in the summer months of 1995, a decision would have to be made in January or February 1995. Shinker stated that the Board did not sign the contract with Dixon until May 1995 and that by that time, Dixon's schedule for the summer of 1995 was full. Shinker stated that the later scheduling of the work was due to the Board's delay not Dixon's.

Regarding the Board's execution of the contract, Shinker stated that Dixon discussed the guarantee set forth in the contract with him and the Board. Shinker stated that Dixon told him and the Board that there would always be cracking with the option the Board had chosen. Shinker stated that Dixon never stated that there would not be any more cracking once his work was completed and that for this reason, the guarantees in the contract excluded "cracks." Shinker stated that Dixon agreed to do the best he could with the cracks, but advised that the track would have to be constantly maintained to keep the track together. Shinker testified that Dixon made this very clear to him and the Board.

Shinker stated that included with the contracts he presented to the Board in the spring of 1995 was a maintenance agreement proposed by Dixon. Shinker stated that the Board rejected Dixon's annual maintenance contract and decided to take no action on it at that time.

Shinker also stated that Dixon suggested to the Board that he install an "inside/outside" curb on the track to better control the contraction and expansion of the track. Shinker stated that the Board decided not to install an inside/outside curb, contrary to Dixon's advice.

West Holt offered into evidence an affidavit of Larry Hermsmeyer. In Hermsmeyer's affidavit, dated November 6, 1997, he stated that he was the current superintendent of West Holt. Hermsmeyer also stated:

I have inspected the running track of West Holt Rural High School, and I have had others inspect the track on behalf of the school district, including Jordan Fisher of Atlas Tennis and Track, 1192 235th Street, Boone, IA 50036, regarding the condition of the track and the work completed by Richard Dixon. It is my understanding that the separation of the rubber running membrane from the underlying surface is unrelated to the cracks that have appeared on the track surface. Rather, the separation of the rubber running membrane from the underlying surface is due to poor workmanship, improper methods, and faulty materials.

At the hearing, Dixon objected to the last two sentences of Hermsmeyer's affidavit on the bases of foundation, hearsay, and legal conclusions. The district court sustained Dixon's objection and did not allow Hermsmeyer's affidavit into evidence. After hearing the parties' arguments, the district court took the matter under advisement.

In a written order filed December 1, 1997, the district court granted Dixon's motion for summary judgment and dismissed West Holt's petition with prejudice, stating that there was no genuine issue of material fact and that Dixon was entitled to judgment as a matter of law. The district court also stated, "As to the issue of causation, the *only* evidence is that of the defendant [Dixon], namely, that the separation of the running membrane resulted from cracks in the underlying surface and not from any defect in materials or workmanship or any other cause chargeable to the defendant [Dixon]."

The district court stated that after Dixon produced this evidence, the burden of producing evidence to show the existence of an issue of fact shifted to West Holt. The district court noted that to meet its burden, West Holt had offered into evidence the affidavit of Hermsmeyer. The district court stated that it erroneously refused to receive the entire affidavit and that only the last two sentences of the affidavit were inadmissible. The district court stated that without the last two sentences of Hermsmeyer's affidavit, West Holt failed to produce any evidence meeting its burden and showing an issue of material fact. Specifically, the district court stated that a superintendent of

schools is not, by virtue of that position alone, an expert in matters of construction and that causation as to a separation of a rubberized surface from the underlying base is a proper matter for expert opinion and does not constitute a proper subject for a lay opinion. The district court also stated, "To the extent that [Hermsmeyer] purports to rely upon statements of Jordan Fisher, the two sentences constitute inadmissible hearsay. . . . The affidavit simply fails to state sufficient foundation to overcome the foundation and hearsay objections interposed by the defendant." West Holt appeals.

## ASSIGNMENTS OF ERROR

On appeal, West Holt contends that the district court erred in granting Dixon's motion for summary judgment and in finding that there was no genuine issue of material fact. Specifically, West Holt contends that the district court erred in (1) ruling that the final two sentences of Hermsmeyer's affidavit were inadmissible as hearsay, and (2) not giving West Holt adequate opportunity to rebut the evidence brought forth by Dixon at the summary judgment hearing.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.* A party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997).

West Holt argues that there remains a material question of fact regarding what Dixon meant by the term "crack" in the

guarantee clause of the contract and what West Holt understood this term to mean. Dixon argues that he produced sufficient evidence at the summary judgment hearing demonstrating that he was entitled to judgment as a matter of law and that West Holt failed to produce any evidence showing that a material question of fact remained.

In the instant case, Dixon brought forth evidence at the summary judgment hearing in the form of affidavits and depositions. Specifically, in his affidavit, Dixon stated that the separation of the running track from the underlying surface is the result of the track's faulty foundation, not caused by any defect in materials or workmanship or any other cause chargeable to Dixon. Dixon stated that during negotiations with Shinker and the Board, he made it very clear that the track would continue to crack unless the foundation was fixed by tearing up the track and re-laying the foundation. Dixon stated that although the Board was aware that the cracking would continue, it opted to disregard his suggestions. Additionally, Dixon stated that at the time the contract was signed, he presented the Board with an annual maintenance contract and a suggestion that the Board contract with him to install curbs around the track, both of which would have helped eliminate further cracking on the track. Dixon stated that the Board declined to enter into a maintenance contract at that time. Similarly, in his affidavit, Shinker attested that Dixon had made these suggestions to the Board and that the Board had rejected each of them.

Once Dixon produced this evidence, West Holt had the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law. After a party moving for summary judgment has shown facts warranting judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law. *Popple v. Rose,* 254 Neb. 1, 573 N.W.2d 765 (1998). If a movant for summary judgment submits an affidavit as to a material fact and that fact is not contradicted by the adverse party, the movant is entitled to summary judgment. *Boyle v. Welsh,* 256 Neb. 118, 589 N.W.2d 118 (1999).

In order to meet its burden, West Holt submitted the affidavit of Hermsmeyer, who stated:

I have inspected the running track of West Holt Rural High School, and I have had others inspect the track on behalf of the school district, including Jordan Fisher of Atlas Tennis and Track, 1192 235th Street, Boone, IA 50036, regarding the condition of the track and the work completed by Richard Dixon. It is my understanding that the separation of the rubber running membrane from the underlying surface is unrelated to the cracks that have appeared on the track surface. Rather, the separation of the rubber running membrane from the underlying surface is due to poor workmanship, improper methods, and faulty materials.

*Hearsay.*

West Holt argues that the final two sentences of Hermsmeyer's affidavit were not inadmissible hearsay. West Holt contends that Hermsmeyer's statement was not offered to prove the truth of the matter asserted, but, rather, offered to indicate that his understanding of the cause of the separation of the rubberized surface from the asphalt base was different from Dixon's. Dixon argues that the trial court correctly refused the last two sentences of Hermsmeyer's affidavit, because those sentences were not based on Hermsmeyer's personal knowledge. Dixon argues that if Hermsmeyer's opinions were based on statements made by Fisher, these statements constitute inadmissible hearsay. We agree with Dixon.

In its order granting Dixon's motion for summary judgment, the district court stated: "Causation as to a separation of a rubberized surface from an underlying base is a proper matter for expert opinion, and does not constitute a proper subject for a lay opinion." The district court also stated: "To the extent that [Hermsmeyer] purports to rely upon statements of Jordan Fisher, the two sentences constitute inadmissible hearsay."

Neb. Rev. Stat. § 25-1334 (Reissue 1995) states in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." See *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997)

(holding that certain affidavits were ineffective to oppose motion for summary judgment because they were not based upon personal knowledge of affiants and because affiants were not competent to testify about matters stated therein). To be effective, evidence opposing the rendition of a summary judgment must be made on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein. *Id.* Additionally, statements in affidavits as to opinion, belief, or conclusions of law are of no effect. *Id.*

In the instant case, in Hermsmeyer's affidavit, he stated that he was the superintendent of West Holt at the time he signed the affidavit, that he had inspected the track, and that he had others inspect the track, including Fisher, regarding the condition of the track and the work completed by Dixon. In the last two sentences of his affidavit, Hermsmeyer stated:

> It is my understanding that the separation of the rubber running membrane from the underlying surface is unrelated to the cracks that have appeared on the track surface. Rather, the separation of the rubber running membrane from the underlying surface is due to poor workmanship, improper methods, and faulty materials.

In Hermsmeyer's affidavit, he failed to affirmatively show that he is competent to give an opinion as to why the surface of the track separated from its base. Opinion evidence which is unsupported by appropriate foundation is not admissible. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999). Additionally, the opinion of a lay witness, formed without personal knowledge, would be inadmissible at trial and, therefore, would not satisfy the requirements of § 25-1334. See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). Clearly, the last two sentences of Hermsmeyer's affidavit constitute Hermsmeyer's opinion, as well as a conclusion which Hermsmeyer is not qualified to give.

Furthermore, if Hermsmeyer was basing his opinion on statements Fisher made to him, these statements constitute hearsay and are ineffective to oppose a motion for summary judgment. Hearsay is defined as a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted.

*Clark, supra.* In *Marshall v. Radiology Assoc.*, 225 Neb. 75, 402 N.W.2d 855 (1987), personal representatives of a deceased patient's estate brought a negligence action against physicians in regard to the diagnosis and treatment of the patient's brain abscess. The physicians moved for summary judgment. The district court granted the motion, and the personal representatives appealed. The Nebraska Supreme Court held that in the absence of competent medical evidence supporting a negligence claim against the physicians, the plaintiff's attorney's affidavit was insufficient to rebut the physicians' prima facie showing of lack of negligence.

In the plaintiff's attorney's affidavit, he stated that a certain doctor had been retained to testify as an expert witness. An unsigned letter from the doctor was attached to the affidavit and contained the doctor's analysis and opinions of the case. In affirming the grant of summary judgment, the Nebraska Supreme Court stated: "The plaintiff was attempting to bootstrap the exhibit attached to her attorney's affidavit into competent expert medical testimony. Such a result would circumvent the statutory requirements and permit the court to consider inadmissible hearsay." *Marshall*, 225 Neb. at 81, 402 N.W.2d at 859.

Similarly, in the instant case, West Holt attempted to bring in expert testimony by having Hermsmeyer state Fisher's opinion in Hermsmeyer's affidavit regarding the cause of the separation of the track's surface from its base. West Holt is not allowed to circumvent the rules against hearsay and relay an expert's opinion through a lay witness. See *Marshall, supra.* See, also, *Hanzlik v. Paustian*, 216 Neb. 575, 344 N.W.2d 649 (1984). For this reason, West Holt's first assignment of error is without merit.

*Continuance.*

In West Holt's reply brief, it contends that Dixon did not conclusively show that West Holt could not produce competent evidence to support a position contrary to that of Dixon's. West Holt contends that on November 12, 1997, immediately following the trial court's summary judgment hearing, a pretrial conference was held. At the conference, the district court found that

"[d]iscovery is completed, except for depositions to be taken on or before December 31, 1997." West Holt argues in its reply brief for the first time that "[t]his extension of time should have had the effect of [a] continuance under §25-1335, and stayed the rendition of a summary judgment until after the completion of the time for depositions." Reply brief for appellant at 4-5.

Errors not assigned in an appellant's initial brief are waived and cannot be asserted for the first time in a reply brief. *Morton v. Farmers Co-op Bus. Assn.*, 1 Neb. App. 552, 510 N.W.2d 326 (1993). An appellate court always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Arcadian Fertilizer v. Sarpy Cty. Bd. of Equal.*, 7 Neb. App. 499, 583 N.W.2d 353 (1998).

After reviewing the record, we note no plain error. As a prerequisite for a continuance, or additional time or other relief, under Neb. Rev. Stat. § 25-1335 (Reissue 1995), a party is required to submit an affidavit stating a reasonable excuse or good cause for the party's inability to oppose a summary judgment motion. *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989). See, also, *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995) (holding that district court had not abused its discretion in failing to grant continuance because Medley failed to request continuance); *Eastroads, Inc. v. City of Omaha*, 237 Neb. 837, 467 N.W.2d 888 (1991) (holding that district court had not abused its discretion in failing to grant continuance given that plaintiff failed to object to hearing on defendant's motion for summary judgment). West Holt failed to submit an affidavit or otherwise request a continuance and failed to object to the hearing on Dixon's motion for summary judgment. For this reason, we find no plain error, and West Holt's argument is without merit.

## CONCLUSION

After reviewing the evidence most favorably to West Holt, and giving West Holt the benefit of all reasonable inferences deducible from the evidence, we conclude that the trial court

did not err in granting Dixon's motion for summary judgment. On this record, Dixon submitted evidence showing that he was entitled to summary judgment as a matter of law. Subsequently, West Holt failed to present evidence showing an issue of material fact. For this reason, we affirm the district court's December 1, 1997, order.

AFFIRMED.