BERNARD H. EITING, APPELLANT, V. ELDON GODDING ET AL., APPELLEES.

214 N. W. 2d 241

Filed January 11, 1974. No. 39046.

Johnston, Grossman & Johnston, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate and Richard H. Williams, for appellees.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and NEWTON, JJ., and STUART, District Judge.

McCOWN, J.

This is an action for damages resulting from an automobile accident. The District Court directed a verdict for the plaintiff for $1,190.90 for damages to plaintiff's automobile and $35 for a designated medical bill. The court directed a verdict for the defendants on all other elements of damages. Plaintiff has appealed.

The accident here occurred on October 29, 1969, at about 8:45 a.m., on a rainy morning. Plaintiff was proceeding east and defendant driver was proceeding west on U. S. Highway No. 136 at a point some distance east

of Hebron, Nebraska. The plaintiff observed defendant's car "fishtailing" as it approached. Plaintiff reduced his speed to 15 to 18 miles per hour, but was unable to get out of the way because of a guard rail along that portion of the highway. The left rear of defendant's car collided with the left rear of plaintiff's car and plaintiff's car spun across the road and the left front struck the guard rail on the opposite side of the highway.

Following the accident, plaintiff felt somewhat "woozy" but had no sensation of pain. He started his car and backed it out of the way. He had no cuts, bruises, or contusions. He told defendant he didn't have any broken bones and "didn't feel too bad." Plaintiff told the investigating deputy sheriff that he was not injured.

Plaintiff testified that he noticed some pain and stiffness about 45 to 50 minutes after the accident and began to have a headache some 3 hours later. He was examined by Dr. Hanigan, the family doctor, the following day and X-rays were taken. Two or three days after the accident he began to feel pain of sufficient severity to cause him difficulty in sleeping. The pain was in his head, neck, and back, extending to his left leg. He saw Dr. Hanigan again in November and was referred to Dr. Getscher, an orthopedic specialist. Dr. Getscher gave him an injection and a prescription which he had filled only once. These three occasions were the only times plaintiff consulted a doctor in the few weeks following the accident and he was not told by either doctor to return for further treatment. Plaintiff received some treatment from a chiropractor in April or May of 1972, some 2½ years later. No medical evidence or testimony from any doctor was received at the time of trial.

Plaintiff testified that the pain in his neck continued for almost a year. He still had some headaches at the

time of trial, movement of his neck was limited, and he experienced difficulty on steps. He became extremely nervous, jumpy, and short tempered. He also testified that he could no longer carry on some physical activities which he had performed prior to the accident.

Plaintiff took a leave of absence from work for about a month following the accident. His employment was later terminated. Plaintiff claimed the termination was due to his inability to perform the job because of his physical condition following the accident. The division manager of plaintiff's employer testified that plaintiff was discharged for failure to make required reports.

Plaintiff's sister, a retired nurse, who, with her husband, shared a duplex residence with the plaintiff and his daughter, testified that plaintiff appeared to be in shock and in pain when she saw him on the day of the accident. She also testified that she had observed certain changes in her brother's physical activities and conduct since the accident. This testimony was in the nature of a lay witness and she was not asked to express any expert or professional opinion as to any causal relationship between the accident and the conditions she observed in her brother.

The District Court found as a matter of law that the defendant was liable for any damages proximately resulting from the accident and directed a verdict for plaintiff in the amount of $1,190.90 for property damage, towing, and storage, and for $35 for Dr. Hanigan's examination and X-rays on the day following the accident. The court also directed a verdict for defendant on all other elements of damages alleged by plaintiff on the ground that there was no evidence that any such other damages were a proximate result of the accident.

The pivotal issue on this appeal is whether or not expert medical testimony is required to establish the causal connection between the injuries allegedly sustained by the plaintiff and the negligence of the defend-

ant. In that connection it should be noted that in this case there is no evidence of any obvious injury, such as a scratch, cut, bump, or bruise. The evidence of personal injury is essentially subjective, grounded almost exclusively on the testimony of plaintiff.

The burden rests upon the plaintiff in an action based upon alleged negligence to prove by a preponderance of the evidence each essential element of the claim he asserts. This includes proof that the negligence charged was the proximate cause of the injury alleged. Fulmer v. United States, 133 F. Supp. 775.

In personal injury cases where the injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, the use of expert testimony is not legally necessary. Clark v. Village of Hemingford, 147 Neb. 1044, 26 N. W. 2d 15.

Courts generally limit such cases to those where the causal connection is clearly apparent from the injury itself and the circumstances surrounding it or where the cause of the injury relates to matters of common experience, knowledge, and observation of laymen. See Wilhelm v. State Traffic Safety Commission, 230 Md. 91, 185 A. 2d 715.

Evidence of an obvious wound, cut, or bruise, or an immediate bleeding, would justify an inference by a layman that the injury was caused by the accident. See Bertram v. Wunning (Mo. App.), 385 S. W. 2d 803.

This court has also noted the distinction between subjective and objective evidence of injury. In Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245, we said: "The question of the necessity of expert evidence to warrant submission to the jury of the issue as to the permanency of an injury or as to future pain or suffering, depends, in a large measure, upon the character of the injury involved, whether it is subjective or objective."

Where the claimed injuries are of such a character

as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. See Howard v. Mansell (Okla.), 430 P. 2d 9. When symptoms from which personal injury may be inferred are subjective only, medical testimony is required. Daniels v. Bloomquist, 258 Iowa 301, 138 N. W. 2d 868. There was no medical evidence to support the required causal connection here. The evidence is therefore insufficient to establish that the personal injuries alleged to have been suffered by the plaintiff were caused by the accident. The medical expense incurred for examination and X-rays on the day following the accident was sufficiently connected and was allowable.

The judgment of the District Court is affirmed.

AFFIRMED.