HOWARD S. FACKLER AND PATRICIA A. FACKLER, HUSBAND AND WIFE, APPELLANTS, V. ROGER M. GENETZKY, APPELLEE.

595 N.W. 2d 884

Filed June 18, 1999. No. S-98-457.

Dorothy A. Schinzel for appellants.

Charles T. Patterson and Patrick L. Sealey, of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Howard S. Fackler and Patricia A. Fackler appeal from a summary judgment entered against them by the district court in their professional negligence action against Roger M. Genetzky, a veterinarian. For the reasons stated herein, we reverse the judgment and remand the cause for further proceedings.

## FACTUAL BACKGROUND

### PLEADINGS

The Facklers filed a petition in the district court on February 12, 1997, against Genetzky and the Atokad racetrack, located in South Sioux City, Nebraska. Atokad subsequently settled with the Facklers and was dismissed as a defendant. The petition generally alleged that Genetzky and Atokad were responsible for the deaths of two racehorses owned by the Facklers. Specifically, the Facklers claimed five "causes of action" as follows:

(1) The "Indian Magic" claim. The Facklers allege that Genetzky and Atokad are responsible for the death of a 5-year-old gelding named "Indian Magic." The theory advanced by the Facklers is that Genetzky gave Indian Magic injections of Lasix and "Bute," two commonly used equine medications, on June 17, 1995. Indian Magic died during the night of June 19-20. The Facklers allege that an autopsy performed by the Veterinary Diagnostic Center of the University of Nebraska concluded that the death was caused by an infection resulting from the use of nonsterile procedures during the administration of an injection given to the horse by Genetzky, making him the cause of Indian Magic's death. The Facklers claim that Indian Magic's value, based upon his initial cost and expected earnings for the next 15 years, was $279,710.

(2) The second "cause of action" related only to Atokad and has been dismissed pursuant to the settlement.

(3) The "Patricia Gold" claim. The Facklers allege that Genetzky and Atokad are responsible for the death of a 3-year-old mare named "Patricia Gold." Patricia Gold's value is alleged to be at least $850,000, based upon her initial cost, future earning capacity, and the projected birth of nine colts, expected to be worth at least $50,000 each. The Facklers allege that they asked Genetzky to administer a lubricating injection to Patricia Gold's knee. On June 4, 1995, Genetzky administered a substance called "Vetalog," which the Facklers allege is not a lubricant, but instead acts to freeze a joint. When the Facklers ran Patricia Gold, her knee shattered, and she was put down.

(4) The "emotional distress" claim. The Facklers allege that the deaths of Indian Magic and Patricia Gold were caused by Genetzky and Atokad and resulted in "much emotional distress" for the Fackler family. This "cause of action" consists entirely of reiterations of how much the Facklers cared for the horses. The Facklers also claim that the horses, particularly Indian Magic, were very close to the Facklers' son. The Facklers' son, however, is not a party to the action.

(5) The "fraudulent billing" claim. The Facklers allege that Genetzky billed the Facklers for services which were not performed and that as a result, Genetzky collected $252 from the Facklers to which he was not entitled.

## SUMMARY JUDGMENT ORDERS

On April 21, 1997, Genetzky moved for partial summary judgment on the emotional distress claim. On July 17, the district court granted partial summary judgment in favor of Genetzky as to the emotional distress claim, based on its determination that Nebraska law does not support a claim for emotional distress resulting from the death of an animal. On January 2, 1998, Genetzky filed a motion for summary judgment on the remaining claims. On April 15, the district court granted summary judgment in favor of Genetzky as to the Indian Magic and Patricia Gold claims, stating that the plaintiffs had failed to present evidence regarding a breach by Genetzky of the standard of care. On the same date, the district court entered summary judgment in favor of Genetzky on the fraudulent billing claim because there was no evidence of damages from the alleged overbilling.

EVIDENCE FOR SUMMARY JUDGMENT MOTIONS

In support of the motions for summary judgment, Genetzky offered 11 exhibits, and the Facklers offered exhibit 12 in opposition. These exhibits are summarized as follows:

Exhibits 1 and 2 are the pleadings. Exhibit 3, entered in support of the 1998 motion for summary judgment, is a copy of the summary judgment order for the 1997 summary judgment on the emotional distress claim. Exhibits 5 and 6 relate only to Atokad and are not relevant to this appeal. Exhibits 10 and 12 are affidavits from the Facklers in opposition to summary judgment, stating only their belief that issues of material fact remain to be decided.

Exhibit 4 is Genetzky's answers to interrogatories. Generally, it contains information about his bills to the Facklers and his insurance coverage.

Exhibit 7 is the deposition of Howard Fackler. The deposition is concerned primarily with the methods used by the Facklers to determine the alleged value of the horses. The deposition also contains Howard's opinion regarding the standard of care that Genetzky should have met, based on his observation that Genetzky had not cleaned Indian Magic's neck prior to administering an injection. Howard claims that the autopsy report for Indian Magic established Genetzky's negligence. Howard also offers his opinion regarding the cause of Patricia Gold's shattered knee. Howard concedes that he is neither a veterinarian nor a veterinary expert. Howard also concedes that the Facklers did not intend to call an expert witness to support the Patricia Gold claim. Howard testified that he had not paid $315 of Genetzky's bills.

Exhibit 8 is the deposition of Patricia Fackler. Patricia's testimony offers nothing beyond that of Howard, and she also concedes that Genetzky's bills are unpaid.

Exhibit 9 is the deposition of Genetzky. Genetzky's testimony relates primarily to his qualifications, as well as to the factual events prior to the deaths of Indian Magic and Patricia Gold. Genetzky generally confirms the allegations of the Facklers regarding the treatments administered to the horses. There is some brief discussion of the autopsy report, but Genetzky expresses no opinion as to its contents, which were unclear from

the deposition testimony. Genetzky expresses no opinion regarding the standard of care, whether he met the standard of care, or what may have caused the death of the horses.

Exhibit 11 is the Facklers' answers to interrogatories. In the interrogatory answers, the Facklers named the expert witnesses they intended to call at trial, as well as the general subject of their testimony, but did not describe the opinions the experts were expected to offer.

The record does not contain the autopsy report, nor does it contain any expert testimony other than that of Genetzky. The only evidence in the record relating to the standard of care, possible breach of the standard of care, and the actual cause of the death of the horses comes from Howard's nonexpert testimony.

## ASSIGNMENTS OF ERROR

The Facklers assign, consolidated and restated, that the district court erred in entering summary judgment against them on their first, third, fourth, and fifth causes of action.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Koltes v. Visiting Nurse Assn.*, 256 Neb. 740, 591 N.W.2d 578 (1999); *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

■ In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Koltes v. Visiting Nurse Assn., supra*; *Divis v. Clarklift of Nebraska*, 256 Neb. 384, 590 N.W.2d 696 (1999).

## ANALYSIS

### INDIAN MAGIC AND PATRICIA GOLD CLAIMS

■ The allegations in the Facklers' petition, construed liberally, state a professional negligence cause of action against Genetzky. This court has previously applied the standards of

professional negligence to a malpractice action involving a veterinarian. *Barney v. Pinkham*, 29 Neb. 350, 45 N.W. 694 (1890). This is the rule in other jurisdictions as well. See, e.g., *Price v. Brown*, 545 Pa. 216, 680 A.2d 1149 (1996); *Downing v. Gully*, 915 S.W.2d 181 (Tex. App. 1996); *Restrepo v. State*, 146 Misc. 2d 349, 550 N.Y.S.2d 536 (1989), *aff'd* 179 A.D.2d 804, 580 N.Y.S.2d 874 (1992); *Turner v. Sinha*, 65 Ohio App. 3d 30, 582 N.E.2d 1018 (1989); *Bartlett v. MacRae*, 54 Or. App. 516, 635 P.2d 666 (1981). As stated by the Supreme Court of Pennsylvania,

> As to a cause of action based on the negligence of a veterinarian in the performance of his/her professional duties or services, we note at the outset that malpractice claims have traditionally arisen in the context of services provided by the legal and medical professions. Similar to the practice of law or medicine, the vocation of veterinary medicine involves specialized education, knowledge, and skills. We conclude, therefore, that professional negligence concepts also extend to veterinary medicine.

*Price v. Brown*, 545 Pa. at 222, 680 A.2d at 1152. We agree.

█ In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized professional standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries. See *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). Although Genetzky disputes the amount of damages claimed in the Facklers' petition, he does not dispute that the Facklers could show some damages from the professional malpractice claims. Genetzky argues that he was entitled to summary judgment because the evidence presented a prima facie case that Genetzky had not deviated from the generally recognized standard of care and that the Facklers failed to rebut his prima facie showing.

█ A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). In the absence of a prima facie showing by the movant

that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial to prove the allegations contained in his or her petition. *Id.*

In the present case, Genetzky has offered no evidence in support of his motion for summary judgment that establishes the professional standard of care for a veterinarian under these circumstances nor any evidence establishing that his actions comported with such standard of care. Such evidence is necessary for Genetzky to have made a prima facie showing for summary judgment.

A similar situation was presented in *Hanzlik v. Paustian,* 211 Neb. 322, 318 N.W.2d 712 (1982), *disapproved on other grounds, Anderson v. Service Merchandise Co.,* 240 Neb. 873, 485 N.W.2d 170 (1992). In *Hanzlik v. Paustian, supra,* the defendant physician in a medical malpractice action successfully moved for summary judgment based upon answers to interrogatories and the depositions of the parties. The defendant's deposition explained the procedures he had followed and the possible consequences of those procedures, but the record contained no evidence that the procedures met the accepted standards of reasonable medical care. *Id.* Based on that record, we determined that "[t]he defendant failed to make a prima facie showing of the absence of negligence on his part, and therefore no burden of producing evidence shifted to the plaintiff." *Id.* at 328, 318 N.W.2d at 716. Consequently, we determined that the defendant was not entitled to summary judgment.

In *Black v. Schmitz,* 211 Neb. 378, 318 N.W.2d 746 (1982), this court reversed a summary judgment granted in a medical malpractice action. In that case, the defendant physician alleged in his answer that he had acted in accordance with the appropriate standard of care. The only evidence entered in support of the summary judgment, however, was the court file and the deposition of the plaintiff's medical expert. *Id.* We determined that "[i]n the absence of any affidavit or deposition of a medical expert witness for the defendants establishing the facts alleged in the answer, there was no evidence upon which the trial court could enter a summary judgment." *Id.* at 380, 318 N.W.2d at 747.

Our decisions in *Hanzlik v. Paustian, supra,* and *Black v. Schmitz, supra,* are controlling in the present case. Genetzky provided no evidence in support of his motion for summary judgment establishing either the appropriate standard of care or that his actions met such standard of care. Because Genetzky failed to make a prima facie showing of the absence of negligence on his part regarding the Indian Magic and Patricia Gold claims, no burden of producing evidence shifted to the Facklers. We, therefore, conclude that Genetzky was not entitled to summary judgment on the Indian Magic and Patricia Gold claims.

### EMOTIONAL DISTRESS CLAIM

The first issue we must confront regarding the emotional distress claim is whether it has been properly preserved for appellate review. This claim is styled in the Facklers' petition as their "Fourth Cause of Action." This claim was dismissed by the district court in an order filed July 17, 1997. The Facklers did not take an appeal in this case, however, until May 11, 1998.

■ Where multiple causes of action are alleged, an entry of judgment on one cause of action is a final, appealable order with respect to that cause of action, despite the pendency of other causes of action in the same suit. *Fitzke v. City of Hastings,* 255 Neb. 46, 582 N.W.2d 301 (1998). In order to vest an appellate court with jurisdiction, a notice of appeal must be filed within 30 days of the entry of the final order or the overruling of a motion for new trial. *Bechtold v. Gomez,* 254 Neb. 282, 576 N.W.2d 185 (1998). Consequently, if the emotional distress claim was in fact a distinct cause of action, then the district court's granting of summary judgment on July 17, 1997, was a final, appealable order and the Facklers failed to take a timely appeal. See *Thrift Mart v. State Farm Fire & Cas. Co.,* 251 Neb. 448, 558 N.W.2d 531 (1997). The critical question, then, is whether the emotional distress claim is a separate cause of action.

■ A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action. *Fitzke v. City of Hastings, supra.* Whether more than one cause of action is stated depends mainly upon whether more than one primary right or subject of

controversy is presented and also upon whether recovery on one ground would bar recovery on the other, whether the same evidence would support the different counts, and whether separate actions could be maintained for separate relief. *Id.*

It is evident, based upon the pleadings and the standards set forth above, that the emotional distress claim is not a cause of action, but, rather, a separate theory of recovery or element of damage. It is based on the same set of operative facts that support the Indian Magic and Patricia Gold claims. The claim presents the same right and subject of controversy as the professional negligence claims, depends upon the same evidence, and would not allow for a separate action or separate recovery from the professional negligence claims. The emotional distress claim was not a separate cause of action, and the district court's partial summary judgment relating to the emotional distress claim was not, standing alone, a final, appealable order. Thus, the Facklers did not waive the claim by failing to take a timely appeal, and we properly have jurisdiction to consider it.

 The district court entered partial summary judgment based upon its determination that emotional damages cannot be recovered for the death of an animal. Nebraska law has generally regarded animals as personal property. See *Nehr v. State*, 35 Neb. 638, 53 N.W. 589 (1892). This court has held that mental suffering is not a legitimate measure of damages for destruction of personal property. *Henderson v. Weidman*, 88 Neb. 813, 130 N.W. 579 (1911).

In other jurisdictions, the general rule is that an animal, regardless of sentimental attachment, is personal property, and recovery cannot be had for emotional damages resulting from the negligent destruction of that property. See, e.g., *Nichols v. Sukaro Kennels*, 555 N.W.2d 689 (Iowa 1996); *Julian v. De Vincent*, 155 W. Va. 320, 184 S.E.2d 535 (1971); *Zeid v. Pearce*, 953 S.W.2d 368 (Tex. App. 1997); *Strawser v. Wright*, 80 Ohio App. 3d 751, 610 N.E.2d 610 (1992); *Daughen v. Fox*, 372 Pa. Super. 405, 539 A.2d 858 (1988), *appeal denied* 520 Pa. 605, 553 A.2d 967; *Fowler v Town of Ticonderoga*, 131 A.D.2d 919, 516 N.Y.S.2d 368 (1987); *Roman v. Carroll*, 127 Ariz. 398, 621 P.2d 307 (Ariz. App. 1980). But see, *Campbell v. Animal Quarantine Station*, 63 Haw. 557, 632 P.2d 1066 (1981);

*Fredeen v. Stride*, 269 Or. 369, 525 P.2d 166 (1974); *La Porte v. Associated Independents, Inc.*, 163 So. 2d 267 (Fla. 1964).

Some courts have recognized a cause of action for intentional infliction of emotional distress where the intentional killing of an animal was concerned. See, *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454 (Alaska 1985); *Gill v. Brown*, 107 Idaho 1137, 695 P.2d 1276 (Idaho App. 1985).

In considering the cases involving negligent injury or destruction of animals, however, we determine that the majority approach is well reasoned and consistent with settled principles of Nebraska law. This court has clearly held that animals are personal property and that emotional damages cannot be had for the negligent destruction of personal property. People may develop an emotional attachment to personal property, whether animals or inanimate objects with sentimental value, but the law does not recognize a right to money damages for emotional distress resulting from the negligent destruction of such property.

Accordingly, we hold that damages for mental suffering or emotional distress may not be recovered for the negligently inflicted death of an animal. The district court's determination to that effect was not error.

### FRAUDULENT BILLING CLAIM

The Facklers allege that Genetzky billed the Facklers for services which were not performed and that as a result, Genetzky collected $252 from the Facklers to which he was not entitled. When an overbilling claim has been raised as an action in itself, rather than a defense to a collection action, this court has regarded the claim as an action for assumpsit for money had and received. See, e.g., *Sesostris Temple Golden Dunes v. Schuman*, 226 Neb. 7, 409 N.W.2d 298 (1987); *Village of Morrill v. Roosevelt P.P. Dist.*, 215 Neb. 41, 337 N.W.2d 125 (1983).

An action for assumpsit for money had and received may be brought where a party has received money which in equity and good conscience should be repaid to another. *Daubman v. CBS Real Estate Co.*, 254 Neb. 904, 580 N.W.2d 552 (1998); *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995). In such a circumstance, the law implies a promise on the part of the person who received the money to

reimburse the payor in order to prevent unjust enrichment. *Id.* Although founded on equitable principles, the action falls under the common-law class of assumpsit and is an action at law. See *id.*

In order to maintain an action for money had and received, a plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. See *Sesostris Temple Golden Dunes v. Schuman, supra.*

In the present case, the Facklers adequately pled an action for assumpsit for money had and received, claiming that Genetzky had overcharged the Facklers in the amount of $252. The undisputed evidence entered in support of Genetzky's motion for summary judgment, however, established that the Facklers had not paid Genetzky and still owed him a total of $315.

Given these facts, it is clear that there was no genuine issue as to any material fact. Genetzky had neither received nor retained the money, so the Facklers could not prove any of the elements required to sustain the cause of action. Thus, Genetzky was entitled to judgment as a matter of law regarding the Facklers' fraudulent billing claim.

## CONCLUSION

Because Genetzky failed to make a prima facie showing of the absence of negligence on his part, we conclude that the district court erred when it granted summary judgment in favor of Genetzky on the professional negligence claims regarding Indian Magic and Patricia Gold. It is regarding those issues that the district court's judgment is reversed, and the cause is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.