HOWARD S. FACKLER AND PATRICIA A. FACKLER, HUSBAND AND WIFE, APPELLANTS, V. ROGER M. GENETZKY, APPELLEE.

638 N.W.2d 521

Filed February 1, 2002.   No. S-00-758.

Dorothy A. Schinzel for appellants.

Charles T. Patterson and Patrick L. Sealey, of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Wright, J.

## NATURE OF CASE

Howard S. Fackler and Patricia A. Fackler sued Roger M. Genetzky, D.V.M., for alleged professional negligence that resulted in the deaths of two horses owned by the Facklers. In *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999), we reversed the trial court's decision to grant summary judgment on the professional negligence claims and remanded the cause for further proceedings. At the close of the Facklers' evidence, the trial court directed a verdict in favor of Dr. Genetzky, and the Facklers appeal.

## SCOPE OF REVIEW

■ The party against whom a verdict is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Steele v. Sedlacek*, 261 Neb. 794, 626 N.W.2d 224 (2001), *modified* 262 Neb. 1, 626 N.W.2d 224.

■ In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996).

## FACTS

In June 1995, the Facklers owned horses named "Indian Magic" and "Patricia Gold." Both horses were kept at Atokad racetrack, where Dr. Genetzky was the practicing veterinarian.

Dr. Genetzky has been a licensed veterinarian for more than 28 years. He received his doctor of veterinary medicine degree from Kansas State University in 1972. In June 1995, he was licensed in both Nebraska and South Dakota. His practice involved mostly large animals, with an emphasis on equine species.

In their petition, the Facklers alleged that on June 17, 1995, they had requested that Dr. Genetzky give Indian Magic an injection of Lasix and an injection of "Bute," two commonly used equine medicines. On June 19, Howard Fackler noticed that the horse had swelling in its neck. The horse died during the night of June 19. The Facklers alleged that the death of Indian Magic was caused by an infection and that the infection was the result of Dr. Genetzky's practice of nonsterile procedures while giving the injections.

By videotape deposition, Vickie Cooper, D.V.M., stated that she had performed a necropsy on Indian Magic and that at the time, the horse was in an advanced state of decomposition. Dr. Cooper did not find any evidence in the major organs that could have caused the death. Her report stated that clostridial myositis (bacterial infection) was found in the neck area where the injections had been given. She opined that the bacterial infection could possibly have resulted from the contamination of a wound. She noted that clostridial bacteria are found in a horse's gastrointestinal tract, are ubiquitous within a horse's environment, and proliferate throughout the body during decomposition.

Dr. Cooper could not state that the death of Indian Magic was caused by the injections or a bacterial infection, but that a number of factors could have caused the horse's death. The degree of decomposition masked any changes that could have led to a more distinctive diagnosis.

The Facklers further alleged they requested that Dr. Genetzky administer a lubricating injection to one of Patricia Gold's knees. On June 4, 1995, Dr. Genetzky administered a substance called Vetalog, which the Facklers claimed is not a lubricant, but, instead, acts to "freeze" an animal's joint. The Facklers claim they were not told of the possible side effects of Vetalog.

Howard Fackler claimed that Patricia Gold was not having any trouble using her knee but that it was "just warm." He stated that the leg "supposedly shattered" when the horse raced 2 or 3 days after the injection was administered. After the injury, Patricia Gold was confined to a small area in an attempt to facilitate healing of the knee. However, in November 1995, the horse escaped from the confined area and while running "snapped the leg clean off." The following day, the Facklers had the horse destroyed.

A jury trial began on June 14, 2000, and at the close of the Facklers' evidence, Dr. Genetzky's motion for directed verdict was sustained by the trial court.

## ASSIGNMENTS OF ERROR

The Facklers assign as error that the trial court erred in (1) granting a directed verdict to Dr. Genetzky, (2) failing to permit the Facklers to prepare and submit as evidence charts regarding the expected earnings of the horses, and (3) "not permitting [them] to submit all of the report Witness Dan Sweetwood had with him."

## ANALYSIS

In an action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized professional standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries. *Fackler v. Genetzky*, 257 Neb. 130, 595 N.W.2d 884 (1999). A defendant's negligence is not actionable unless it is a proximate cause of the plaintiff's injuries or is a cause that proximately

contributed to them. *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). Proximate causation requires proof necessary to establish that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff. *Id.* Where the character of an alleged injury is not objective, but, rather, subjective, the cause and extent of the injury must be established by expert medical testimony. *Id.* Subjective injuries may be inferred only from their symptoms and, consequently, require medical expert testimony to determine the cause and extent thereof. *Id.*

The party against whom a verdict is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Steele v. Sedlacek*, 261 Neb. 794, 626 N.W.2d 224 (2001), *modified* 262 Neb. 1, 626 N.W.2d 224. In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996).

At trial, the Facklers asserted that Dr. Genetzky was negligent because he failed to have Indian Magic held properly while the injections were administered and either failed to clean the area of the neck where the injections were given or failed to use a new needle.

Dr. Cooper and Harald Boschult, D.V.M., testified regarding the standard of care for administering an injection to a horse. Dr. Boschult stated that the area should be cleaned of debris as much as possible and that it would be advisable to have someone restrain the horse while the injection is given. Dr. Boschult noted that the State Racing Commission requires veterinarians to use single-use disposable needles.

Dr. Cooper testified that if she were to give an injection, she would make sure there was not excessive gross contamination at the site of the injection. Dr. Cooper stated that reusing a needle could increase the potential for contamination of that needle.

Giving the Facklers the benefit of all reasonable inferences from such testimony, we conclude that the testimonies of Drs. Boschult and Cooper were sufficient to establish the generally recognized medical standard of care required for giving a horse an injection.

Next, the Facklers were required to prove that Dr. Genetzky deviated from this standard. John Loghry, a horse owner, testified that when Dr. Genetzky gave injections to Loghry's horses, he did not wipe down the area. Another horse owner, Ron Brockert, testified that he had seen Dr. Genetzky use the same needle on more than one horse and that on one occasion, he witnessed Dr. Genetzky wash his equipment with a garden hose.

Patricia Fackler was present when Dr. Genetzky administered the injection of Lasix to Indian Magic. Although she saw Dr. Genetzky grab a syringe from his pocket, she turned away because she does not like needles. She did not see Dr. Genetzky brush or clear the area prior to removing the syringe from his pocket. Howard Fackler testified that he held Indian Magic when Dr. Genetzky administered the injection of Bute. Howard Fackler said that Dr. Genetzky placed his finger on the horse's neck, the vein popped up, and the injection was administered. After he pulled out the needle, Dr. Genetzky wiped his hand over Indian Magic's neck.

Dr. Genetzky testified that when he administers an injection, he pushes on the vein until it becomes distended. With his right hand, he injects the needle into the vein. After the injection, he wipes off the skin.

We cannot say that the evidence presented was sufficient to establish that Dr. Genetzky deviated from the standard of care set forth by Drs. Boschult and Cooper. No evidence was presented to establish that the area where the injections were administered was unclean or that the needle had been reused. On cross-examination, Dr. Boschult could not say that Dr. Genetzky had acted outside the standard of care.

The Facklers assert that the death of Indian Magic was most likely caused by toxic poisoning. The necropsy report stated: "Gross and histopathological changes are consistent with clostridial myositis possibly resulting from contamination of a wound area. . . . Often, animals will die within 24 hour[s] after

onset of local signs as a result of toxin production from bacterial agents as well as degenerating cell components."

In her videotaped deposition, Dr. Cooper was asked: "From your having examined the horse and with your knowledge of having a veterinary degree and even a Ph.D. in this area, would you say that this — the death of this horse could have been caused by something happening when the Bute shot was given?" Dr. Cooper answered: "I cannot say that, no." Dr. Cooper was then asked: "Would you give any — would you say with any certainty that you could — that if anything else could have caused the death?" She responded: "A number of things could have potentially caused the death." At trial, Dr. Boschult testified that the necropsy report was suggestive that bacteria caused Indian Magic's death.

The Facklers offered testimony that six or seven other horses at the racetrack had swollen necks at approximately the same time as Indian Magic. When asked what might have caused the horses to develop swollen necks, Dr. Cooper stated that there "could be contamination of the substance that was being injected; contamination of the needles and syringes used; poor technique." Dr. Cooper stated that these were "potential things that could cause lesion formation in the neck."

Assuming the truth of all competent evidence submitted on behalf of the Facklers, resolving every controverted fact in the Facklers' favor, and giving them the benefit of every inference that can reasonably be deduced from the evidence, the Facklers have failed to establish their burden of proof that the injections administered by Dr. Genetzky were the proximate cause of Indian Magic's death. Although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence. *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not. *Id.*

The testimony given by Drs. Boschult and Cooper did not establish the cause of Indian Magic's death or whether any

negligence on Dr. Genetzky's part could have proximately caused the death. The Facklers have failed to produce any evidence by which a jury could reasonably conclude that the death of Indian Magic was caused by negligence on the part of Dr. Genetzky. Therefore, the trial court correctly directed a verdict in favor of Dr. Genetzky regarding the death of Indian Magic.

The Facklers also assert that Dr. Genetzky was negligent in administering an injection of Vetalog to Patricia Gold. Howard Fackler testified that he requested a lubricating cortisone injection. Vetalog is a cortisone injection, but the Facklers claim that it is not a lubricant. They allege that Vetalog caused Patricia Gold's joint to stiffen.

Dr. Boschult testified that Vetalog could increase the chances of a joint's shattering. However, he also testified that Vetalog does not necessarily stiffen joints, and he could not say that Vetalog stiffened Patricia Gold's joint. He testified that the stiffness in the joint was probably caused by arthritis.

The Facklers did not offer any expert testimony about the actual cause of the alleged injury. Howard Fackler stated that after the leg "supposedly shattered," he had the knee x-rayed, but no veterinarian testified as to the results of any x ray.

Evidence that an injection of Vetalog could increase the chances of injury is not sufficient to establish the proximate cause of the injury or that Dr. Genetzky deviated from the standard of care in giving this injection. The jury would be forced to speculate on both the type and cause of the injury.

The Facklers also claim that Dr. Genetzky breached the standard of care by not informing them of the possible side effects of Vetalog. Howard Fackler claimed that had he known of the possible side effects, he would not have raced Patricia Gold so soon after the injection. This allegation was not included in the Facklers' petition. The purpose of pleadings is to frame the issues upon which a cause of action is to be tried, and the issues in a given case will be limited to those which are pled. *V.C. v. Casady*, 262 Neb. 714, 634 N.W.2d 798 (2001). The Facklers did not amend their pleading before trial, and therefore, this claim is not properly before us. Furthermore, no expert testimony established that Vetalog caused any harm to Patricia Gold.

In summary, the Facklers' failure to produce expert testimony regarding the cause of the injuries to their horses would require a jury to speculate about the nature of the injuries. Therefore, the trial court was correct in directing a verdict in favor of Dr. Genetzky.

The Facklers' second assignment of error is based upon their claim that the trial court erred by failing to allow them to prepare and submit charts regarding the expected earnings of the horses. Because we find that the trial court properly sustained Dr. Genetzky's motion for directed verdict, we do not consider this assignment of error.

Finally, the Facklers claim that the trial court erred in "not permitting [them] to submit all of the report Witness Dan Sweetwood had with him." Daniel Sweetwood, an investigator for the State Racing Commission, and Dr. Jack Muller, who was at that time the official veterinarian for the commission, conducted an investigation into the death of Indian Magic.

Our examination of the record reveals that the Facklers never offered the report as an exhibit. When Dr. Genetzky offered the report, the Facklers objected to the admission of the exhibit as hearsay. The objection was overruled except as to hearsay. The Facklers cannot complain about the exclusion of evidence that was not admitted because of their objection. A party who objects to evidence and causes it to be excluded cannot complain that the trial court erred in excluding the evidence. See *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999). This assignment of error is without merit.

## CONCLUSION

The Facklers failed to produce expert testimony which could support a finding that Dr. Genetzky was negligent or that such negligence was a proximate cause of the injuries. The judgment of the trial court sustaining Dr. Genetzky's motion for directed verdict is affirmed.

AFFIRMED.