IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


SAIGEN T. V. MOSAIC


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SAIGEN T., BY AND THROUGH HER LEGAL GUARDIANS, JACYNDA G. AND JAMES G., APPELLANT,

V.

MOSAIC, APPELLEE.


Filed July 26, 2016.    No. A-15-299.


Appeal from the District Court for Hall County: WILLIAM T. WRIGHT, Judge. Affirmed.

Brian D. Craig and Dianne D. DeLair, of Disability Rights Nebraska, for appellant.

Stephen G. Olson II and Greg Schreiber, of Engles, Ketcham, Olson & Keith, P.C., for appellee.


MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Saigen T., by and through her legal guardians, Jacynda G. and James G., appeals from an order of the district court for Hall County granting Mosaic's motion for summary judgment. For the reasons stated below, we affirm.

## BACKGROUND

On August 27, 2012, Saigen brought an action for negligence by and through her legal guardians, Jacynda and James, against Mosaic. Jacynda is Saigen's mother. The petition alleged that Saigen sustained injuries consistent with sexual assault while under Mosaic's supervision, and that such injuries resulted from Mosaic's negligence in its failure to protect Saigen from harm.

- 1 -

Saigen is a 27-year-old adult female who has been diagnosed with Tuberous Sclerosis (TS). This condition causes tumors to grow and calcify within an individual's body. As a result of this illness, Saigen suffers from severe mental retardation and seizures. She is non-verbal, communicating only through facial expressions, sounds, pointing, and other forms of non-verbal communication. Saigen has a history of throwing tantrums when she does not want to go somewhere and screaming when excited or angry. If Saigen does not want to go somewhere, she lies on the ground and goes limp, making it difficult to move her. She also engages in aggressive behavior on occasion, such as crying and throwing herself on the ground. Saigen occasionally picks at sores and loose skin, and has issues with placing her hands in her pants and "digging." She is unable to communicate when she needs to use the restroom. As a result, someone must take her to the toilet, sit her down, and ensure she stays until she goes to the bathroom. Jacynda indicated that circumstances could occur where Saigen may receive bruises as a result of being lifted up or helped on and off the toilet. Saigen takes stool softeners to combat her tendency to become constipated, and on average would have a bowel movement every 2 to 3 days.

As a result of her condition, Saigen requires 24-hour supervision and assistance with daily activities, a service that was provided in part by Mosaic. Mosaic provides services to individuals with disabilities throughout Nebraska, including in-home assistance and resident services in Grand Island. Saigen alternated between residing in a 2-bedroom apartment and with her guardians. Mosaic provided 24-hour assistance to Saigen 3 to 4 days a week when she was in her apartment. During the rest of the week, Saigen would stay with Jacynda and James at their family residence. Mosaic employees assisted Saigen with daily activities including meal preparation, apartment cleaning, laundry, using the toilet, bathing, dressing, and changing her diaper. To facilitate services, Mosaic employees would stay overnight in the second bedroom of Saigen's apartment.

On Friday, September 5, 2008, a Mosaic employee began her shift at Saigen's apartment. The employee stayed overnight and remained at Saigen's residence through part of Sunday, September 7, 2008. Jacynda alleges that the employee was joined by her husband and daughter at the apartment during that weekend, and that they also stayed overnight. On September 7, Jacynda picked up Saigen from the apartment. Jacynda claims that at this time the employee's daughter was inside the apartment and the employee's husband was waiting in his truck in the apartment parking lot. Jacynda proceeded to transport Saigen to the family home.

Upon arrival at the family residence, Jacynda noticed a large circular bruise on Saigen's back along with scratches on her buttocks. Jacynda attempted to place Saigen in a Jacuzzi bath, an activity Saigen typically enjoys. However, Saigen refused to enter the bath. Jacynda then attempted to place Saigen on the toilet, but she refused to sit. While changing Saigen's pull up diaper, Jacynda noticed a swollen purplish protrusion from Saigen's rectum along with redness "down there." In total, Jacynda observed Saigen to have bruising and scratches on her buttocks, vaginal and rectal injuries (including prolapsing/swelling of the rectum), and bruises on her arms. Based on her experience as a nurse, Jacynda suspected that these symptoms were the result of a sexual assault. Jacynda proceeded to call a physician that same day (September 7). Based on Jacynda's description, the physician stated over the phone that the symptoms were consistent with prolapsed thrombosed hemorrhoids. Jacynda claims that Saigen had no history of

hemorrhoids and the characteristics of the injury did not resemble any hemorrhoid she had seen during her years as a nurse. However, the physician convinced her that it could be hemorrhoids, so she proceeded to apply a hemorrhoid cream to Saigen. Saigen was not taken to the hospital that night.

On September 8, 2008, Jacynda returned Saigen to her apartment. Soon thereafter, Jacynda received a phone call from the manager of the apartment complex. The manager informed her that another tenant reported hearing screaming throughout the night and observing men coming and going out of Saigen's apartment during the prior weekend. Jacynda immediately transported Saigen from the apartment to a hospital in Grand Island.

Saigen was placed under general anesthesia at the hospital by a Sexual Assault Nurse Examiner (SANE) for purposes of administering an examination. The exam report indicated a moderate amount of blood contained in the vaginal vault and bruising near Saigen's cervix. Saigen was not menstruating and had not menstruated for the previous 3 to 4 months. The report also showed an abrasion to the clitoris and an abrasion to the anus. Based on these results, the SANE nurse told Jacynda that she was 95- to 98-percent certain that Saigen had been sexually assaulted.

Saigen was also examined for evidence of another person's DNA, semen, or a sexually transmitted disease. The test results were negative, with no sign of another person's DNA, semen, or disease. The exam results reported "unsure" for penetration of or ejaculation in the vagina, anus, and mouth. Saigen's rectal swelling subsided approximately 24 to 48 hours following Jacynda's discovery of the condition on the evening of September 7.

On September 9, 2008, the Grand Island Police Department began a sexual assault investigation. A search of the apartment did not identify any sperm or another person's DNA. A Mosaic employee indicated to the lead investigator that employees would wash Saigen's bedsheets once a week. The lack of evidence at the scene made it difficult for the police to determine whether a sexual assault had occurred. Following the investigation, the Department labeled the case as "open not workable, inactive" due to the "lack of evidence to implicate a specific person(s) in the commission of this alleged sexual assault."

On August 27, 2012, Saigen filed the negligence action against Mosaic. The petition alleged that Saigen was sexually assaulted sometime between September 5 and 7, 2008, while under the care of Mosaic. Jacynda believes that the assault was perpetrated by the Mosaic employee and her husband. During discovery, Saigen did not designate an expert witness to testify regarding the cause, nature, and extent of her alleged injuries.

On October 10, 2014, Mosaic filed a motion for summary judgment. The motion alleged that Saigen's petition failed to state a cause of action against Mosaic and therefore summary judgment was appropriate. Specifically, the motion asserted that the facts presented in Saigen's petition, even when considered in a light most favorable to her, failed to create a genuine issue of material fact with respect to the claimed causes of action. Mosaic contended that Saigen failed to provide material evidence to support the causation and damages elements of her negligence claims. Further, Mosaic asserted that Saigen's claims were based on mere speculation and conjecture regarding the cause of her injuries, and that Saigen could not prove causation without

presenting expert testimony because the alleged injury was subjective, rather than objective, in nature.

A hearing was held on the summary judgment motion on January 8, 2015. Mosaic offered numerous exhibits in support of its motion, including the pleadings; discovery responses; and the depositions of Jacynda and Michael Nelson, a criminal investigator with the Grand Island Police Department. Saigen offered various exhibits, including the affidavits/reports of Dale Dangremond, a consultant who investigated Mosaic's procedures, employee training, and investigation into the incident; certain discovery responses; an affidavit from a special education director who worked with Saigen; the SANE reports from the hospital; a supplemental narrative report from the Grand Island Police Department; and excerpts from the depositions of employees of Mosaic. Mosaic objected to a number of Saigen's exhibits on hearsay grounds. The court took the motion and the objections under advisement. The pertinent factual information from these exhibits is set forth in the above background.

On March 16, 2015, the district court entered a lengthy, detailed order which sustained Mosaic's motion for summary judgment and dismissed Saigen's case. The court held that "there was no evidence that would establish by the preponderance of the evidence that a sexual assault has actually occurred" and that Saigen "failed to create an issue of facts regarding the cause and nature of what are, in essence, subjective injuries." The court noted that this failure resulted from Saigen not providing expert medical testimony for the purpose of establishing the cause and nature of her alleged injuries, as was necessary due to Saigen's inability to testify regarding the cause of her injuries and the lack of objective evidence of sexual assault. With regard to Jacynda's assertion that the SANE nurse told her she was 95- to 98-percent certain that a sexual assault had occurred, the district court found Mosaic's hearsay objection to have merit, and further found that there was no foundation presented regarding the ability of the nurse to determine the occurrence of a sexual assault.

As a result, the court found Saigen unable to prove an essential element of her negligence claim, and therefore summary judgment was appropriate.

Saigen subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Saigen assigns, restated, that the district court erred in (1) determining that Saigen's injuries were subjective rather than objective, and therefore Saigen was required to prove causation through expert medical testimony, and (2) finding that Saigen could not prove by a preponderance of the evidence that a sexual assault occurred.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *State Farm Fire & Cas. Co. v. Dantzler*, 289 Neb. 1, 852 N.W.2d 918 (2014). See, also, *Gonzalez v. Union Pacific RR. Co.*, 292 Neb. 281, 872 N.W.2d 579 (2015) (on motion for summary judgment, question is not how factual issues are to be decided but

whether any real issue of material fact exists); *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Rent-A-Roofer v. Farm Bureau Prop. & Cas. Ins. Co.*, 291 Neb. 786, 869 N.W.2d 99 (2015).

ANALYSIS

The burden rests upon the plaintiff in an action based upon alleged negligence to prove by a preponderance of the evidence each essential element of the claim that he or she asserts. This includes proof that the negligence charged was the proximate cause of the alleged injury. *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). See, also, *Fackler v. Genetzky*, 263 Neb. 68, 638 N.W.2d 521 (2002) (defendant's negligence is not actionable unless it is proximate cause of plaintiff's injuries or is cause that proximately contributed to them). The resolution of this appeal revolves around the element of causation and whether the alleged negligence of Mosaic was the proximate cause of Saigen's alleged injuries. The answer to this question is in turn dependent upon whether the injuries Saigen allegedly suffered were objective in nature or were subjective in nature, and therefore whether medical expert testimony was required to establish causation.

Saigen asserts that her injuries were objective in nature, and therefore did not require expert testimony to prove that her injuries were the result of a sexual assault caused by the negligence of Mosaic. Specifically, she claims that the injuries were easily observable and understandable by a layperson, and thus were objective. Mosaic counters by arguing that the injuries could have occurred in a number of ways, and Saigen has failed to provide sufficient objective evidence to demonstrate that the injuries were caused by sexual assault. Mosaic asserts that the evidence of alleged sexual assault presented by Saigen is mere speculation and conjecture, which alone is insufficient to establish causation.

In personal injury cases where injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, use of expert testimony is not legally necessary to establish the cause and extent of such injuries. *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994). See, also, *Lovette v. Stonebridge Life Ins. Co.*, 272 Neb. 1, 716 N.W.2d 743 (2006); *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974). "Courts generally limit such cases to those where the causal connection is clearly apparent from the injury itself and the circumstances surrounding it or where the cause of the injury relates to matters of common experience, knowledge, and observation of laymen." *Eiting v. Godding*, 191 Neb. 88, 91, 214 N.W.2d 241, 243-44 (1974).

Where the character of an alleged injury is not objective, but, rather, subjective, the cause and extent of the injury must be established by expert medical testimony. *Fackler v. Genetzky*, 263 Neb. 68, 638 N.W.2d 521 (2002). See, also, *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999) (expert medical testimony serves purpose of establishing crucial causal link between plaintiff's injuries and defendant's negligence); *Eiting, supra* (where claimed injuries are of such character as to require skilled and professional persons to determine cause and extent thereof, question is one of science, and such question must necessarily be determined from testimony of

skilled professional persons and cannot be determined from testimony of unskilled witnesses having no scientific knowledge of such injuries). Subjective injuries may be inferred only from their symptoms and, consequently, require medical expert testimony to determine the cause and extent thereof. *Fackler, supra*; *Eiting, supra*.

Where a causal connection between negligence or assault and the resulting injury was apparent, Nebraska courts have determined that expert testimony is unnecessary. See, *Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996) (leaving foreign object, tube fragment, in patient's body, understandable by jury without technical evidence as within realm of knowledge of laypersons); *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994) (objective nature and effect of losing consciousness, leading to car accident allegedly resulting from driver negligence, is plainly apparent and therefore no expert testimony required); *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991) (within common knowledge and experience of layperson to determine that individual does not enter hospital for extraction of his or her teeth and come out with injury to nerves in his or her arms and hands, without some type of negligence occurring); *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988) (expert testimony regarding causal nexus unnecessary where jury composed of lay people could infer beyond reasonable doubt, based upon either medical or objective evidence of physical and mental disabilities, that defendant's assault, single blow to victim sending him to sidewalk, proximately caused injuries); *Frahm v. Carlson*, 214 Neb. 532, 334 N.W.2d 795 (1983) (following car accident and striking of forehead on car doorpost, complaints of headaches and stiff neck, and red bruise mark on forehead, justified inference of causation).

Conversely, when Nebraska courts have been faced with fact patterns involving less apparent casual connections, the courts have required expert testimony. See, *Yoder v. Cotton*, 276 Neb. 954, 758 N.W.2d 630 (2008) (summary judgment granted in medical malpractice case resulting from failure to present expert medical testimony where plaintiff suffered torn shoulder muscle, allegedly caused by defendant doctor, and plaintiff had previously injured his shoulder and undergone multiple surgeries prior to defendant's examination); *McNeel v. Union Pacific RR.*, 276 Neb. 143, 753 N.W.2d 321 (2008) (expert testimony necessary, due to subjective nature of symptoms, to establish basis for inference that employee's injuries were caused by inhalation of fumes attributable to employer's negligence); *Eno v. Watkins*, 229 Neb. 855, 429 N.W.2d 371 (1988) (plaintiff's alleged headaches and backaches after car accident were subjective in nature, requiring expert medical testimony to establish causation and extent and nature of injuries); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981) (plaintiff failed to produce any expert medical testimony connecting pain with alleged lifting accident in worker's compensation action, and thus was unable to recover damages).

Saigen presented evidence, through Jacynda's testimony, that Jacynda observed Saigen to have a prolapsed and swollen rectum; bruising and scratches on her buttocks; vaginal redness; and bruises on her arms. These injuries were clearly observable. Saigen argues that this evidence was objective in nature, distinguishing it from *Eiting v. Godding, supra*, because there was evidence of an obvious injury "such as a scratch, cut, bump, or bruise." 191 Neb. at 91, 214 N.W.2d at 243.

While we agree that there was some evidence of obvious injury to Saigen, what is not obvious in this case, and therefore subjective, is the cause of these injuries. This case is somewhat unique in that we do not have evidence of an "event", such as an automobile accident or a physical assault, that can be pinpointed as the cause of obvious injuries. Unfortunately, Saigen is unable to communicate what occurred that resulted in her injuries and there were no eyewitnesses to an event. Thus, we cannot say that Saigen's injuries so obviously stem from a sexual assault caused by Mosaic's negligence that the causal link may be inferred by laypersons.

Further, the medical records presented in this case are insufficient to determine causation. The SANE examination revealed blood in the vaginal vault, bruising near the cervix, and abrasions to the clitoris and anus. It appears that these injuries were not clearly observable except through an internal examination. The records further indicated that there was no physical evidence of a sexual assault such as another person's DNA, semen, or disease. Again, we are unable to find that a layperson could clearly conclude that these injuries obviously stemmed from a sexual assault and as such, expert testimony was required to determine causation. Saigen attempted to connect her injuries to a sexual assault through statements made to Jacynda by the SANE nurse and a neighbor at Saigen's apartment, however, these statements were hearsay, without foundation, and did not qualify as expert evidence.

We recognize that, because we are reviewing a summary judgment granted against Saigen, we must view the evidence in a light most favorable to her to determine whether there exists any genuine issues of material fact. Applying this standard, although Saigen has presented evidence of her injuries, she has failed to provide any evidence which establishes the requisite causal connection between these injuries and a sexual assault caused by the negligence of Mosaic. In other words, the cause of Saigen's injuries was not clearly evident from the nature of the injuries and surrounding circumstances alone.

The lack of a clear connection between the injuries and a sexual assault was exacerbated by evidence of Saigen's physical habits and conditions, including her problems with constipation, throwing herself on the ground, picking at her sores and skin, "digging" in her pants, and generally aggressive and erratic behavior. Together these factors would make identifying causation without expert testimony even more difficult for a jury of lay persons. Specialized knowledge of a skilled professional was necessary to articulate the potential cause of the injuries to a jury.

For the sake of completeness, we note that beyond the physical injuries allegedly suffered by Saigen, she also alleged that Mosaic's negligence was the proximate cause of "severe psychological, emotional mental anguish and harm." As with the physical injuries and surrounding circumstances presented by Saigen, these alleged harms are subjective in nature and also required the support of expert testimony regarding causation, which Saigen failed to provide. See, *Doe v. Zedek*, 255 Neb. 963, 970, 587 N.W.2d 885, 891 (1999) ("[m]ental suffering and a sense of helplessness are injuries which are not plainly apparent and are demonstrated primarily by complaints of the victim [and] are, therefore, subjective in nature and effect"); *Anonymous v. St. John Lutheran Church*, 14 Neb. App. 42, 703 N.W.2d 918 (2005).

The district court's determination that expert medical testimony was required for Saigen to identify the cause of the subjective injuries was in accordance with well-established Nebraska precedent.

Saigen also argues that the district court erred in finding that there was no evidence that would establish by the preponderance of the evidence that a sexual assault occurred. Saigen points to the presence of a Mosaic employee and her family in Saigen's apartment prior to the discovery of Saigen's injuries, the report that a neighbor heard screams coming from Saigen's apartment during the weekend in question, and the injuries to Saigen's clitoris, anus, and buttocks. Because we have determined that the injuries allegedly indicative of a sexual assault required expert medical evidence to determine causation, the district court did not err in its finding that there was no evidence that a sexual assault had actually occurred. Further, the presence of the Mosaic employee and her family in Saigen's apartment, and the hearsay statement regarding screams being heard in her apartment, are insufficient to create a genuine issue of material fact regarding the occurrence of a sexual assault upon Saigen through the negligence of Mosaic.

Saigen has failed to adduce evidence showing that any negligence on the part of Mosaic resulted in a sexual assault that caused injuries to Saigen. See *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001) (plaintiff in negligence action is required to adduce evidence showing there was negligent act on part of defendant and such act was cause of plaintiff's injury). Because there was no genuine issue of material fact supporting Saigen's allegation that the cause of Saigen's injuries was a sexual assault that occurred as a result of Mosaic's negligence, the district court did not err in granting summary judgment in favor of Mosaic.

## CONCLUSION

The district court did not err in granting Mosaic's motion for summary judgment. Viewing the evidence in a light most favorable to Saigen, we find no material issue of fact regarding the objective nature of the injuries suffered by Saigen allegedly caused by a sexual assault, and the court did not err in finding that Saigen failed to adduce expert medical evidence of sexual assault. We therefore affirm.

AFFIRMED.